## JOHN FLEMING

*v.*

## SAMUEL O. CARTER *et al.*

1. SPECIFIC PERFORMANCE—*sufficiency of contract.* Where the complainant agreed for the purchase of a piece of land with one who only held a bond for a deed of this and other lands, the deed to be made upon full payment by him, if the defendant, the original vendor, would make a deed to him for such part, and the latter told complainant to make the purchase, and, on payment to his vendee of the purchase money within one year, he would make him a warranty deed, on the faith of which he bought and paid for the land, took immediate possession and made valuable improvements thereon, it was *held*, that complainant was entitled to a specific performance of the contract on the part of the defendant, and that the contract was sufficiently definite in its terms, and that the case was not affected by the Statute of Frauds.

2. CONSIDERATION—*payment of money to another.* Where the defendant, who had given a bond for a deed to a purchaser of land, to be made upon payment of the price, agreed with the complainant to convey to him a small portion of the land, severed from the main body by a railroad, upon his paying his vendee the price of $15 per acre for the same in one year, it was *held*, that the payment of such price to the intermediate vendee was a sufficient consideration to support the defendant's agreement to convey, whether the defendant ever received the money paid or not.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. JAMES B. JOHNSTON, and Mr. E. F. BULL, for the appellant.

Mr. CHARLES H. BRUSH, for the appellees.

Per CURIAM: This was a bill for injunction and for specific performance, by appellees, against appellant.

Some time in 1863, appellant had sold a farm of three hundred acres of land to one Wilcox, and executed a bond to him for the conveyance thereof, upon the payment of $7500, in ten equal annual payments, the first whereof to be made January 1, 1866, with interest to be paid annually. Wilcox went into possession of the land, and afterwards, as is claimed by appellees, he and appellant contracted with Samuel O. Carter to sell to him, for his son Heman Carter, a portion of this land, being a little less than thirty-two acres, which is separated from the principal body by the Chicago, Burlington and Quincy railroad.

An ejectment suit was brought by appellant, against Heman Carter, in the LaSalle circuit court, for the possession of this tract, which there resulted in a judgment in favor of Carter, but which, on appeal to this court, we reversed, upon the ground that Carter's defense was not cognizable in a court of law, and that his remedy was in equity for specific performance. The present bill was thereupon filed to enjoin appellant from further proceeding in that ejectment suit, and for a specific performance of the contract whereby he claims to have purchased the tract in controversy.

The court below, on hearing, found that the allegations in the bill were substantially proved, and decreed the relief prayed.

Appellant insists that the contract alleged in the bill was not proved, and that no contract was proved with sufficient definiteness and certainty to entitle appellees to relief.

The substance of the bill is, that, at the time of the alleged contract, the legal title to the tract stood in appellant, who, with his wife, Rebecca, had executed a bond for a deed to one George W. Wilcox, who was then in possession; that appellant agreed to deed the tract to Samuel O. Carter, or to whomsoever he might direct, upon the payment of the purchase money for it, at $15 per acre, to Wilcox; that Samuel O. Carter paid the purchase money to Wilcox, in two payments—the first in the month of October, 1866, and the last by the 1st of

January, 1867; that Wilcox paid the money to appellant, and informed him, at the several times, that it was paid to him by Samuel O. Carter for the tract; that Heman Carter went into possession, at the instance of Samuel O. Carter, by consent of Wilcox and appellant, and has remained in possession since, and has paid all taxes and made valuable improvements on the property, and that appellees have demanded deed, etc.

Samuel O. Carter, in his testimony, shows that he had a conversation with Wilcox, who was in possession of the tract, about the purchase of it, in December, 1865, in which Wilcox manifested a desire to sell. He then proceeds: "I asked him what he wanted per acre. He said $15. He said he wanted his money in one year. Then I said, the title is not in you. He said no; title was in Fleming. I said, if Fleming would make me a warranty deed, I'd take the land. Next, I met Fleming at my house. I told him my agreement with Wilcox, and asked him if he would make me a good deed, or a warranty deed. He said: 'You buy the land of Wilcox, and pay him for it, and I'll make you a good and sufficient deed.' * * I told both Wilcox and Fleming I wanted the land for my son, Heman, and Fleming said he would deed to me or whoever I said. * * I paid Wilcox $200, in November, 1866. In January, the land had been surveyed. There was a trifle less than thirty-two acres—more than I supposed; and I then paid him $270, the balance for the land as surveyed. * * I told my son I had bought the place of Mr. Wilcox, and Fleming agreed to give us a deed, when we paid $450, for it, and he could go and occupy it. My son took possession under me."

There is no controversy in regard to what land this evidence relates. It is not denied, and the record satisfactorily shows, that it relates to the tract described in the bill. Here, then, is proof which sufficiently agrees with the substance of the averments in the bill as to the terms of the contract and its performance; and we think there can be no question but that

the contract thus proved is sufficiently definite and certain to admit of specific performance.

The subject matter of the contract is not in doubt—the price is fixed, the time of payment agreed to, and the person to whom the deed is to be made designated. Possession was taken, payment made in accordance with the terms of the contract, and it only remains for appellant to make his deed as he agreed.

Wilcox, in his testimony, supports Samuel O. Carter fully. In a conversation he had with appellant, after he had agreed with Samuel O. Carter to sell the tract to him, he says: "Elder Fleming said the land" (alluding to this tract) "had better be sold. I told him there was a purchaser on the terms. He told me to sell the land and pay him the money, and he would give a deed. He said he would give a good deed. I told him Samuel Carter was the purchaser; that he wanted to buy for his son Heman. I told Fleming the price he was willing to give—$15 per acre. Fleming said the price was satisfactory. He told me to sell, and he would give a good deed to the Carters." He, also, agrees with Samuel O. Carter in proving payment, and says that, as each payment was made, he paid it over to appellant, and informed him from whom and on what account it was paid.

John Carter, son of Samuel O. Carter, also corroborates Samuel O. Carter, in his evidence. He only heard a part of the conversation, and could not, therefore, be expected to give in detail all that was said while they were discussing the sale. He says: "Father said to Fleming, 'If I buy that land, will you give me a deed?' Fleming said, 'When you pay Mr. Wilcox for that land, I will give you a warranty deed.'"

The evidence of John A. Gillett is precisely of the same character as that of John Carter. He does not profess to have been present at the entire interview, and to have heard all that was said. He did, however, hear Carter say to Fleming, "If I buy that piece of land, can I get a deed, or will you give me a deed?—or something to that effect." To which

Opinion of the Court.

Fleming replied: "Yes; any bargain you make with Wilcox I'll sanction."

It is not a fair or reasonable criticism of the evidence of these two witnesses to consider it as the specific statement of the terms of a contract. The parties had been in discourse, as is evident from the evidence, for some time. The details had been talked over and assented to. It was of no consequence to appellant, and of but little to Samuel O. Carter, whether the deed should be made to himself or to his son Heman. If made to himself, it only put him to the trouble of conveying to Heman; but it was of much consequence to both, whether appellant would convey on payment being made to Wilcox; and this, most naturally, would be the uppermost question in the mind of Samuel O. Carter, and the one that he would last dwell upon. Nor do we consider the effect of the evidence materially weakened by the difference in the phraseology. The idea is substantially the same. Appellant agreed to convey, when payment should be made, in conformity with the contract with Wilcox.

The proof shows possession taken of the tract, and improvements made thereon, by Heman Carter, substantially as alleged in the bill.

Appellant's evidence we do not regard as sufficient to overcome that of appellees, and we do not deem it important to quote it or refer to it any further.

Some question seems to be made in argument, but, we presume, not seriously, as to the sufficiency of the consideration to support appellant's promise. The payment by Samuel O. Carter of the price of the land is surely sufficient, under every definition of a valuable consideration that can be found in a book of recognized authority. This payment was made, by direction of appellant, to Wilcox. Whether, therefore, Wilcox accounted to appellant for it, or not, is of no consequence to Carter. He did not undertake to, and was not required to, guaranty the fidelity of Wilcox in accounting for it.

We think the case is sufficiently made out, and that it is unaffected by the Statute of Frauds.

The decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE DICKEY, having been of counsel for appellees, took no part in the consideration of this case.